Citation Nr: 1806334 
Decision Date: 01/31/18 Archive Date: 02/07/18

DOCKET NO. 10-21 137 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to a disability rating in excess of 30 percent for the service-connected psychiatric disability.

2. Entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU) 


ORDER

A disability rating of 70 percent, but not higher, for the service-connected psychiatric disability is granted. 


FINDING OF FACT

For the entire period, the Veteran's psychiatric disability has been manifested by occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, but has not more nearly approximated total occupational and social impairment. 


CONCLUSION OF LAW

The criteria for a disability rating of 70 percent for the service-connected psychiatric disability have been met; the criteria for a disability rating of 100 percent have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.126, 4.130, Diagnostic Code 9413 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

The appellant is a veteran (the Veteran) who had active duty service from June 1965 to July 1967. He was awarded the Combat Infantryman Badge, the Purple Heart, and the Bronze Star Medal. 

This appeal comes before the Board of Veterans' Appeals (Board) from an October 2007 rating decision of the RO in Detroit, Michigan.

In March 2017, the Board remanded this appeal for additional evidentiary development. The appeal has since been returned to the Board for further appellate action. The Board also denied increased ratings for service-connected shell fragment wounds of the right hip and forearm, issues that were on appeal at that time. The Board's decision with respect to those claims is final. See 38 C.F.R. § 20.1100 (2017). 

In May 2017, the Veteran presented testimony at a Board hearing, chaired by the undersigned Veterans Law Judge sitting at the RO. The Veteran was informed of the basis for the RO's denial of his rating claim and he was informed of the information and evidence necessary to substantiate the claim. A transcript of the hearing is associated with the claims file. 38 C.F.R. § 3.103 (2017).

The Veteran submitted additional medical evidence after the most recent Supplemental Statement of the Case and waived his right to have the claim remanded to the RO for initial consideration of this evidence. 

The evidence submitted by the Veteran reasonably raises a claim of entitlement TDIU. The issue of TDIU entitlement is a component of the rating claim in accordance with Rice v. Shinseki, 22 Vet. App. 447 (2009) (where there is evidence of unemployability raised by the record during a rating appeal period, the TDIU is an element of an initial rating or increased rating). That issue is addressed in the REMAND below and is therein REMANDED to the RO via the Appeals Management Center (AMC) in Washington, DC. VA will notify the Veteran if further action is required.

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two ratings are potentially applicable, the higher rating will be assigned if the disability more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. See 38 C.F.R. § 4.3.

A disability rating may require re-evaluation in accordance with changes in a veteran's condition. Thus, it is essential that the disability be considered in the context of the entire recorded history when determining the level of current impairment. See 38 C.F.R. § 4.1. See also Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Nevertheless, where a veteran is appealing the rating for an already established service-connected condition, his present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal is based on the assignment of an initial rating for a disability, following an initial award of service connection for this disability, the rule articulated in Francisco does not apply. Fenderson v. West, 12 Vet. App. 119 (1999). Instead, the evaluation must be based on the overall recorded history of a disability, giving equal weight to past and present medical reports. Id. Staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection of parts of the musculoskeletal system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. The functional loss may be due to absence of part, or all, of the necessary bones, joints, and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995).

After the evidence has been assembled, it is the Board's responsibility to evaluate the entire record. 38 U.S.C.A. § 7104(a) (West 2014). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2017). A VA claimant need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert at 54.

In the process of evaluating a psychiatric/mental disorder, VA is required to consider a number of pertinent factors, such as the frequency, severity, and duration of a veteran's psychiatric symptoms and the veteran's capacity for adjustment during periods of remission. After consideration of these factors, and based on all the evidence of record that bears on occupational and social impairment, VA must assign a disability rating that most closely reflects the level of social and occupational impairment a veteran is suffering rather than based solely on the examiner's assessment of the level of disability at the moment of examination. When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. See 38 C.F.R. § 4.126. 

The current appeal arises from a claim of entitlement to service connection received at the RO on October 11, 2007. In a April 2010 rating decision, the RO granted service connection for Anxiety Disorder NOS (not otherwise specified), assigned an initial rating of 30 percent under Diagnostic Code 9413, and assigned an effective date of October 11, 2007.

The VA Secretary, acting within his authority to adopt and apply a schedule of ratings, chose to create one General Rating Formula for Mental Disorders. 38 U.S.C. § 1155; see 38 U.S.C. § 501; 38 C.F.R. § 4.130. 

By establishing one general formula to be used in rating more than 30 mental disorders, the VA Secretary anticipated that any list of symptoms justifying a particular rating would, in many situations, be either under- or over-inclusive. The use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of symptoms contemplated for each rating, in addition to permitting consideration of other symptoms, particular to each veteran and disorder, and the effect of those symptoms on the claimant's social and work situation. This construction is not inconsistent with Cohen v. Brown, 10 Vet. App. 128 (1997). See Mauerhan v. Principi, 16 Vet. App. 436, 442 (1992). 

The schedular criteria incorporate the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). 38 C.F.R. §§ 4.125, 4.130. Since August 4, 2014, VA has required a diagnosis of a mental disorder that conforms with the DSM-5. For claims prior to that date, VA required a diagnosis that conformed with the DSM-IV-TR. See Schedule for Rating Disabilities: Mental Disorders and Definition of Psychosis for Certain VA Purposes, 79 Fed. Reg. 45,093, 45,093 -94 (Aug. 4, 2014 (amending 38 C.F.R. § 4.125)). The DSM-5 eliminated the Global Assessment of Functioning (GAF) scores used in the DSM-IV. 

The evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the diagnostic code. Instead, the rating specialist is to consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the DSM. See 38 C.F.R. § 4.126. 

If the evidence demonstrates that a claimant suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate, equivalent rating will be assigned. Mauerhan, 16 Vet. App. at 443. The Court of Appeals for the Federal Circuit has embraced the Mauerhan interpretation of the criteria for rating psychiatric disabilities. Sellers v. Principi, 372 F.3d 1318, 1326 (Fed. Cir. 2004).

Pertinent to the claim on appeal, the General Rating Formula for Mental Disorders at 38 C.F.R. § 4.130 provides the following ratings for psychiatric disabilities: 

A 10 percent rating is warranted for PTSD if there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication. 

A 30 percent rating is warranted for PTSD if there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is warranted if it is productive of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to compete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent rating, may be assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 

A 100 percent rating contemplates total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. 4.130, Diagnostic Code 9411.

A January 5, 2007, VA Mental Health Note reveals that the Veteran denied any specific mood problems since his service, but had significant difficulty talking about his experiences in Vietnam and was generally unable to identify his emotions. In contrast to his description, he appeared tearful and presented with psychomotor retardation. There was no history of suicidal acts or self-harm, no history of violence, assaulting others, or legal problems. He was oriented x 3, lethargic, with increased latency of speech response, with a flat affect and a dysphoric mood, but with normal and coherent thought. There were no perceptual disturbances. Judgment was good and memory was intact. A diagnosis of major depression, rule-out PTSD was rendered. A GAF score of 60 was assigned. (VBMS record 11/12/2015 at 575).

An August 28, 2007, Neuropsychology Consult reveals a mental status examination that resulted in a finding of mild impairment. The Veteran presented with good hygiene and grooming. Rapport was easily established and he was cooperative and compliant throughout the neuropsychological evaluation. His speech was of normal volume, although at times it was of slow rate and halting. The content of his speech was logical, coherent, and goal-directed. He demonstrated little difficulty understanding task instructions, although some instructions needed to be simplified or repeated. He presented with a blunt range of affect and his mood was mildly dysphoric. He was fully oriented and successfully followed a three-step command, wrote a sentence, copied a drawing, and recalled two of three words after a brief delay. Memory was moderately impaired. Testing demonstrated mild to moderate levels of emotional distress (VBMS record 11/12/2015 at 569).

A March 29, 2010, VA Mental Health Note reveals complaint of depression. The Veteran's affect was appropriate. Rhythm, rate, and volume of speech were within normal limits. Thought processes were logical and goal directed. The Veteran was alert and oriented to person, place, and time. Some problems with memory, attention, and concentration were reported. He denied any auditory or visual hallucinations. There was no report or evidence of delusional thinking. There was no history of suicide or homicide ideations, plans, or intents. Fund of knowledge was fair. Judgment was fair. PTSD was diagnosed and a GAF of 60 was assigned (VBMS record at 505).

An April 8, 2010, VA Mental Health Note reveals a GAF score of 60 (VBMS record at 500).

A September 24, 2012, VA Mental Health Note reveals a GAF score of 62 (VBMS record at 348).

An October 16, 2012, VA Psychotherapy Session reveals the Veteran denied suicidal ideation or homicidal ideation, plan, or intent.

A December 12, 2012, VA Psychotherapy Session reveals the Veteran's report that symptoms of PTSD had increased since a recent neighborhood robbery. Overall, he was sleeping 2-3 hours at night, and 3-4 hours during the day. He reported an increase in nightmares, though not necessarily trauma specific (VBMS record at 322).

A November 6, 2013, VA Mental Health Note reveals complaint of sleep impairment. Speech was goal-directed; mood and affect were euthymic with congruent affect; No history of perceptual disturbances was noted. Thought process and content were normal; insight was good; judgment was good. A GAF score of 60 was assigned (VBMS record at 276).

A November 18, 2013, VA Mental Health Note reveals a GAF of 62 was assigned (VBMS record at 261).

April 16, 2014, VA Psychotherapy Session reveals the Veteran was alert and oriented to person, place, and time. Mood was depressed and anxious with appropriate affect. There was no report or evidence of psychotic symptoms. He denied any homicidal or suicidal ideations, plans, or intents. 239).

VA Psychotherapy Sessions from April 2014 through September 2014 include similar findings. During these sessions, the Veteran was generally alert and oriented to person, place and time; mood was depressed and somewhat anxious; there was no report or evidence of psychotic symptoms; he denied any homicidal or suicidal ideations, plans, or intents (VBMS record 11/12/2015 at 152-237).

A private evaluation (DBQ) completed by E. Tripi, PhD, in April 2017, includes a diagnosis of PTSD and an assessment of serious symptoms, with an GAF score of 46. Dr. Tripi checked the box indicating total occupational and social impairment. In a separate psychosocial assessment and employability evaluation, also dated April 2017, Dr. Tripi noted that the Veteran's symptoms include sleep impairment, nightmares, intrusive thoughts, flashbacks, emotional numbing, lack of trust, no close friends, alienation, irritability and anger, periods of violence, impaired concentration, hypervigilance, exaggerated startle response, anxiety and depression. Dr. Tripi found the Veteran to be unemployable due to his PTSD.

The Veteran was evaluated by D. Castine, LMSW, on August 16, 2015, having been referred by VA. Dr. Castine provided a summary dated May 11, 2017. He noted that the Veteran has symptoms of flashbacks, intrusive thoughts, depression, sleep disturbance, periods of anxiety, irritability, angry outbursts, and strained family relationships. He has been motivated and active in his treatment. He has progressed in reducing these problems but they continue to be the focus of treatment. He will need ongoing psychotherapy.

After a review of all of the evidence, the Board finds that a rating of 100 percent, as recommended by Dr. Tripi, is not warranted. The Board notes that the determination as to whether there is total occupational and social impairment is an adjudicative matter, not a medical question. Here, the Board finds that, although the Veteran has serious impairments in both occupational and social functioning, the Veteran retains a significant degree of function in both areas. The Board interprets the term "total" as comprising the entire amount. See Merriam-Webster's Collegiate Dictionary, Eleventh Edition, 2007, at 1320. Notable in this finding, the Veteran has consistently been found to be alert, oriented to his environment, and able to engage appropriately with treatment providers. Therefore, it can be said that there is no significant impairment in these areas. He is able to function independently, and has no history of psychotic or hallucinatory symptoms. This is pertinent evidence to a determination of total occupational and social impairment. 

The Veteran also appeared before the undersigned at a Board hearing and was able to answer questions directly and appropriately. While the Board is not competent to assess the details of his psychiatric disability, these lay observations are competent and pertinent evidence regarding a determination of whether there is total occupational and social impairment, a determination which is the province of the Board as adjudicator.

The Veteran's GAF scores have generally been in the range of 51 to 60, which is indicative of only moderate symptomatology. Even the GAF score of 46 assigned by Dr. Tripi suggests only serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). In many respects, this description resembles the symptoms examples for the 70 percent rating, but does not suggest total occupational and social impairment. 

In short, the gross impairment of behavior resulting in severe disorientation of the individual, which is contemplated by the 100 percent rating criteria, is simply not evident in this case at any time. 

However, in light of Dr. Tripi's report, which is indicative of psychiatric symptoms which are significantly worse than currently evaluated, the Board finds that a disability rating in excess of 30 percent is warranted. In so finding, the Board notes that his impairment is constant and persistent, and is therefore worse than the "occasional" decrease in work efficiency and "intermittent" periods of inability to perform occupational tasks contemplated for the current 30 percent rating. 

The Board further finds that, in light of the impairment of memory and concentration (thinking), ongoing depression (mood), periods of violence (judgment), combined with the acknowledged occupational and social impairments (work and family relations), the criteria for a 70 percent rating are more nearly approximated than are those for either the 30 percent or 50 percent rating. See Bowling v. Principi, 15 Vet. App. 1, 11-14 (2001) (the criteria for a 70 percent rating are met if there are deficiencies in most of the areas of work, school, family relations, judgment, thinking, and mood). See 38 C.F.R. § 4.7. 

The Board also finds that Dr. Tripi's report does not represent a recent worsening of the Veteran's disability, and that his disability level has remained consistent throughout the period on appeal. Accordingly, a staged rating is not appropriate. See Fenderson, supra.

To that extent, the Board concludes that an increased rating is warranted. However, a disability rating in excess of 70 percent is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. As the preponderance of the evidence is against any rating in excess of 70 percent, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 371 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).


REMAND

The Board has granted an increased rating of 70 percent for the service-connected psychiatric disability. In addition, the Veteran has submitted probative evidence that his service-connected psychiatric disability has rendered him unable to secure or follow a substantially gainful occupation. Dr. Tripi has described him as unemployable due to his psychiatric disability. However, the Veteran has not submitted an Application for Increased Compensation based on Unemployability (VA Form 21-8940), which contains necessary and vital information that VA requires before processing TDIU claim. Remand is therefore necessary to afford the Veteran an opportunity to submit the appropriate claims form and any associated evidence for consideration and adjudication of the TDIU claim by the RO in the first instance. 

Accordingly, the TDIU issue is REMANDED for the following action:

1. Provide the Veteran with appropriate and adequate notice regarding his TDIU claim, to include an Application for Increased Compensation based on Unemployability (VA Form 21-8940). 

2. After affording the Veteran reasonable time to respond the above, and after taking any additional development deemed necessary, adjudicate the claim for TDIU. If the benefit sought on appeal is not granted, the Veteran and his representative should be provided a supplemental statement of the case and an appropriate time period for response. The case should then be returned to the Board for further consideration, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). The Veteran is advised to appear and participate in any scheduled VA examination, as failure to do so may result in denial of this rating claim. See 38 C.F.R. § 3.655 (2017). 

This issue must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




____________________________________________
JONATHAN B. KRAMER 
Veterans Law Judge, Board of Veterans' Appeals

ATTORNEY FOR THE BOARD L. Cramp, Counsel

Copy mailed to: Disabled American Veterans 


Department of Veterans Affairs